1

2

3

4

5

6

7

8

9          **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

11

12  DARLENE ANDREA REFFEL,           )   Case No. ED CV 16-01985-AS
                                     )
13              Plaintiff,           )   **MEMORANDUM OPINION AND**
                                     )   **ORDER OF REMAND**
14                                   )
                                     )
15      v.                           )
                                     )
16  NANCY A. BERRYHILL,[1] Acting    )
    Commissioner of Social          )
17  Security,                        )
                                     )
18              Defendant.           )
    _____   )

19

20                     **PROCEEDINGS**

21

22      On September 16, 2016, Plaintiff filed a Complaint seeking review

23  of the denial of her application for Disability Insurance Benefits.

24  (Docket Entry No. 1).  The parties have consented to proceed before the

25  undersigned United States Magistrate Judge.  (Docket Entry Nos. 9-10).

26  On January 31, 2017, Defendant filed an Answer along with the

27

28  ───────────────────────
            [1]   Nancy A. Berryhill is now the Acting Commissioner of the
    Social Security Administration and is substituted in for Acting
    Commissioner Caroyln W. Colvin in this case.  See 42 U.S.C. § 205(g).

                              1

Administrative Record ("AR"). (Docket Entry Nos. 13-14). On July 11, 2017, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures in Social Security Case," filed September 20, 2016 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On March 7, 2013, Plaintiff, formerly employed as a receptionist/physical therapy assistant, an administrative assistant for a construction equipment company, and an accounting specialist for a temporary agency and an insurance company (see AR 41-43, 186, 195-99), filed an application for Disability Insurance Benefits, alleging an inability to work because of her disabling condition since September 8, 2010. (AR 159-65). On December 30, 2014, the Administrative Law Judge ("ALJ"), Jesse J. Pease, heard testimony from Plaintiff (who was represented by counsel) and vocational expert Mary Jesko. (See AR 35-67). On February 13, 2015, the ALJ issued a decision denying Plaintiff's application. (See AR 16-27). After determining that Plaintiff had severe impairments -- "fibromyalgia, non-insulin dependent diabetes, history of cervical cancer in remission, anxiety, prescription medication dependence, right ankle sprain, patellofemoral osteoarthritis

of the left knee, lumbar strain, obesity, migraines, and depression" (AR 18) –- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments (AR 19-20), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work[3] with the following limitations: can lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; can stand and walk for about 6 hours out of an 8-hour workday; can sit for about 6 hours out of an 8-hour workday; can do postural activities occasionally, but no ladders, ropes, or scaffolds; no hazardous machinery; no unprotected heights; and can do simple and routine tasks in a nonpublic environment. (AR 20-25). The ALJ then determined that Plaintiff was not able to perform any past relevant work (AR 25), but that jobs existed in significant numbers in the national economy that Plaintiff can perform, and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 25-27).

Plaintiff requested that the Appeals Council review the ALJ's Decision. (See AR 8). The request was denied on July 19, 2016. (See AR 1-5). The ALJ's Decision then became the final decision of the

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

Commissioner, allowing this Court to review the decision.  See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ failed to properly (1) determine Plaintiff's RFC; and (2) assess Plaintiff's credibility.  (See Joint Stip. at 3-8, 11-14).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration.  Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address Plaintiff's first claim of error.

**A.    The ALJ Did Not Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to properly find that Plaintiff's testimony about her pain and functional limitations was not fully credible.  (See Joint Stip. at 10-14).  Defendant asserts that the

ALJ properly considered Plaintiff's testimony and found Plaintiff not entirely credible. (See Joint Stip. at 14-17).[4]

Plaintiff made the following statements in a "Function Report - Adult" dated May 3, 2013 (see AR 206-14):

> She lives with her family in a house. Her impairments limit her ability to work because she has extreme swelling and pain when she walks, sits or stands, she has weak muscles that limit her walking and standing to 5 minutes (her high insulin level prevents her from building muscle strength), she has shoulders, hips and legs that when used get stiffer and more painful, and she has extreme anxiety and panic attacks when dealing with simple things (like completing paperwork). For her impairments she takes Prozac (which keeps her awake), Xanax (which makes her sleepy), Buspar (which makes her sleepy), Cymbalta (which makes her nauseated, gives her diarrhea and keeps her awake), Lisinopril (which makes her sleepy), Norco (which keeps her awake and causes migraine headaches), and Tylenol with Codeine #3. (See AR 206, 213-14).

---

[4] The Court rejects Defendant's alternative assertion that Plaintiff has waived this claim (see Joint Stip. at 17, citing Independent Towers of Washington, 350 F.3d 925, 928 (9th Cir. 2003)). See Tadman v. Berryhill, 2017 WL 1073341, *4 (C.D. Cal. March 21, 2017)(rejecting the defendant's same waiver argument).

With respect to daily activities, she stays at home, lies on the bed, and moves to lie on the couch (she cannot sit for long). She does not take care of anyone else. She takes care of pets, letting them in and out of the house. Her husband helps her take care of the pets, feeding them, playing with them, bathing them, and picking up after them. As a result of her impairments, she can no longer work, walk (she bought an electric scooter to get around), shop, water ski, or snow ski. Her impairments affect her abilities to bathe (her husband helps her so she does not fall; she feels exhausted after taking a shower or bath), to care for her hair (she cannot dry her hair for more than 5 minutes), to feed herelf (she cannot stand long enough to cook), and to use the toilet (she gets stiff from sitting). She does not need special reminders to take care of personal needs and grooming or to take medicine. Her impairments inflame her joints and cause her to move to different beds, thereby affecting her sleep. (See AR 207-08, 213).

She does not prepare meals because her joints and muscles gets stiff and swollen when she stands, sits or walks; her husband has to cook. She is not able to do any house or yard work (unless she is heavily medicated) because of her pain and lack of strength. She goes outside occasionally, driving a car (but "not very far"). She shops for clothes and presents

by mail.  She rarely shops in stores; when she does shop in stores she has to know exactly where the items are (because of limited walking time).  (See AR 208-09).

She is not able to pay bills, count change, handle a saving account, or use a checkbook or money orders, because her shoulders are swollen and in pain.  Her impairments have affected her ability to handle money; she cannot spend money because she cannot go anywhere for long, and her medications are expensive. (See AR 209-10).

She no longer does her hobbies and interests, namely, walking dogs, reading, and using the computer.  Because of her impairments, she can write and use the computer only a little at a time.  She spends time with others, talking on the phone maybe once a day.  She does not go to any places on a regular basis.  She needs to be reminded to go to doctors' appointments, and sometimes needs to be accompanied.  She has problems getting along with others because strong-willed, overbearing and negative people make her anxious and cause her to have panic attacks.  Since her impairments began, people in positions of authority such as police and bosses cause her to experience extreme anxiety and to cry. (See AR 210-12).

Her impairments affect her lifting, squatting, bending, standing, reaching, walking, kneeling, stair-climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. When she moves for more than 5 minutes, her joints tighten, get swollen, and feel pain. She can walk for 25 feet before she has to rest, and then must rest for at least 30 minutes before she can resume walking. Her ability to pay attention depends on her level of anxiety. She can follow written and spoken instructions okay. Although she does not get along well with authority figures, she has never been fired or laid off from a job because of problems getting along with other people (she left a job at Empire Orthopedic before she could be fired). She does not handle stress well. She handles changes in routine fine. Since her impairments began, she is afraid of new people and going places. She uses a wheelchair (but her husband could no longer push it) and an electric scooter, both of which were prescribed by her doctors (Dr. Fagan, Dr. Hussein). (See AR 211-12).

Plaintiff made the following statements in a "Function Report - Adult" dated November 14, 2013 (see AR 232-40)[5]:

---

[5] Many of Plaintiff's statements of repetitive. The Court will try not to repeat statements made by Plaintiff in her early "Function Report-Adult."

8

Her ability to work is limited by her shoulders (limited motion due to inflamed bursitis), lower back, hips, quad muscles, knees (particularly her left knee), joints, weak muscles (caused by high insulin and a high dose of Crestor), migraine headaches, and short-term memory loss (caused by 5-hour and 10 hour surgeries).  She takes Prozac (which keeps her awake), Tylenol with Codeine #3 (which keeps her awake) Norco (which keeps her awake), Restorile (which makes her weak) and Crestor (which makes her muscles weak).  (See AR 232, 239).

As far as her daily activities are concerned, she does not take care of anyone else or pets.  As a result of her impairments, she can no longer walk, ride a bike, cook, clean, do her own hair, enter or exit the bath, shop, water ski, snow ski, hike, garden, or fill out paperwork quickly.  Her impairments affect her sleep because she can only sleep on her back (she feels like she is laying on rocks when she sleeps on her sides).  Her impairments affect her ability to dress (she wears "easy on clothing"), to bathe (she needs help getting in and out), to care for her hair (a friend helps her do her hair once a week), to feed herself (she cannot cook), to use the toilet (she has a hard time getting up and down), to shop, to clean, and to do laundry.  She needs special reminders taking care of personal needs and grooming (she cannot remember when

she last bathed), and she needs special reminders and help taking medicine (she cannot remember what pills she took; her husband puts her pills in a daily pill box). (See AR 233-34).

She rarely goes outside; when she does go out she travels in her scooter. She does not go out alone because she is unable to put together her scooter and because she can walk, stand or sit for only 15 minutes (on a good day). She can drive, but only if she takes heavy doses of pain medications and does not drive a long distance. She shops by mail for birthdays and Christmas. She shops twice a year, but only for minutes. Although she cannot pay bills, handle a savings account (she can use a computer for only 5 minutes), or use a checkbook or money orders, she can count change for about 5 minutes. (See AR 235-36).

She no longer does any of her hobbies or interests because of her severe pain. With reminders, she goes to the doctors every 3 months, and sometimes she needs somebody to accompany her (depending on her mobility, depression, anxiety and migraines). She does not have any problems getting alon with family, friends, neighbors, or others. Since her impairments began, changes in social activities cause her severe anxiety and panic attacks which lead to depression. (See AR 236-37).

Her impairments affect the same areas as she stated before, with the addition of talking and the elimination of getting along with others. She can walk for 50 feet before needing to rest, and then she needs a minimum of half-a-day before she can resume walking. The length of time she can pay attention depends on her depression, anxiety or panic atacks. She cannot finish what she starts, and she has difficulty with written instructions (she has to re-read them) and spoken instructions (she has to have them repeated). Authority figures frighten her and cause her severe anxiety and panic attacks. She does not handle stress well, which is why she has been prescribed four different medications. She handles changes in routine only if she can remember the change (her short-term memory loss interferes). Her unusual behaviors include talking to herself and obsessing over things. She uses a wheelchair, which was prescribed by a doctor about 10 years ago, and a scooter, which was prescribed by a doctor 3 years ago. (See AR 237-38).

Plaintiff testified at the December 30, 2014 administrative hearing as follows (see AR 40-52):

She attended college for one year. In 2007/2008, she did skilled accounting work -- going through records doing accounting, copying checks, opening mail -- for a temporary

11

service. She worked as an administrative assistant, doing basic accounting, for a construction equipment company. She also worked as a receptionist/physical therapy assistant for a physical therapy place. The last place she worked was not friendly and "kicked up" her anxiety. When asked why she was not able to work, she said she had brought a "cheat sheet" because her anxiety and panic attacks causes her brain to go blank and because she had a hard time remembering things. She has fibromyalgia, pain in her shoulders (which makes her hands numb), pain in her joints, migraine headaches, diabetes (uncontrolled), anxiety (every day), and panic attacks (caused by anything new, but at least once a week in the past month; it takes her at least an hour to return to normal after an attack). Since 2010 (when she had her last surgery for cancer), she cannot take care of her daily personal care (shower, hair, shaving), she cannot sit because her hips get stiff and her lower back starts to hurt (with pain down to her ankles), her left knee does not bend or straighten (it swells up), she can walk for about 15 minutes before her back tightens up, she cannot sleep because of the shoulder pain, and she is sensitive to heat. Toradol shots for her fibromyalgia relieves the pain for a couple of days. For her fibromyalgia she has been prescribed various medications (Norco, Tylenol with Codeine), but she could not afford them or they increased her anxiety; she also has been prescribed a

12

patch (Lyrica) ("a step above Norco"), but she could not afford it. She does not take Norco "like [she] should" because she "suffer[s] through pain" and does not "want to move up in pain pills." A psychologist prescribed Prozac for her anxiety, which "seems to have helped," but her anxiety kicked in when she went out (particularly during interviews, when she was not able to say what she wanted). She has been prescribed a muscle relaxant. She also has been prescribed Xanax for her anxiety, but she tries not to take it so much because of an addiction concern. (See AR 40-48, 50-54).

When asked about prescription medication dependence and her "overly getting medications from different sources and overly using medication," she responded she only got medication (something stronger than codeine) from her rheumotologist, who released her back to the care of another doctor "because [the rheumotologist] really couldn't do anything more for [her]" since the prescribed medications "kicked up the panic and anxiety." (See AR 46-47).

She cannot do anything around the house; her husband does all of the cooking and cleaning. She tries to walk but her back tightens up. Before she experiences serious pain, she can sit in a chair for maybe 10 minutes, and she can walk about 5 to 10 minutes (which takes her to the end of the block

and back).  She can lift only less than 5 pounds (she needed to lift a coffee pot with two hands that morning).  She has to lie down during the day.  She cannot finish tasks, such as washing dishes, because she cannot stand for that long, her arms lock up, and then she "squirrels" and forgets what she is doing.  (See AR 48-49, 53).

She would have to lay down 7 to 7 1/2 hours out of an 8-hour workday.  She cannot do her former receptionist work because she cannot reach and move her arms, hold things, type, or write things down, and because her anxiety caused by people coming in, talking on the phone, and depending on the friendliness of the people.  (See AR 49-50, 52).

Prior to discussing Plaintiff's testimony, the ALJ addressed Plaintiff's credibility as follows: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 21).

After discussing the medical evidence relating to Plaintiff's physical impairments (see AR 21-22), and after briefly summarizing Plaintiff's testimony in her function reports and at the administrative hearing with respect to her physical impairments (see AR 22), the ALJ

14

addressed Plaintiff's credibility regarding her physical impairments as follows:

> The undersigned finds the claimant not entirely credible regarding the alleged severity of her physical impairments. The claimant reports she has been using a prescribed wheelchair for 10 years and a prescribed scooter for 3 years, but the medical evidence does not establish the medical necessity for an assistive ambulatory device. Neither her treatment records nor Dr. Bernabe's orthopedic report indicate an ongoing need for an assistive device. The claimant testified she has been taking less pain medication than she should because of concerns about addiction. Despite her concerns, she is not in pain management. A psychiatric consultative examiner noted the claimant appears to be overusing benzodiazepines and sedatives, and diagnosed the claimant with sedative hypnotic and anxiolytic abuse (Exhibit 8F, p. 5-6). The claimant's allegation of a disabling physical condition is not well-supported. A sedentary residual functional capacity is not appropriate, but the claimant is capable of a light range of work.

(AR 22-23).

The ALJ then proceeded to discuss the medical evidence relating to Plaintiff's mental impairments. In that discussion, the ALJ briefly

summarized Plaintiff's testimony in her Function Reports and at the administrative hearing concerning her mental impairments. (See AR 23-25). The ALJ addressed Plaintiff's credibility regarding her mental impairments as follows:

> The undersigned finds the claimant not entirely credible regarding the alleged severity of her mental impairments. The claimant stopped working because she was not treated well at her workplace, but she responded well to mental health treatment and even reported returning to school. Since she has not been following up with a psychiatrist, medication management became more difficult, but she acknowledges benefitting from Prozac. The claimant has been able to interact appropriately with treatment providers and consultative examiners. She appears capable of working in a nonpublic environment. Dr. Unwalla's psychiatric report also indicates the claimant would be capable of simple and routine tasks.

(AR 25).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment

that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not entirely credible.[6]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, supra, 80

---

[6] The Court will not consider reasons for finding Plaintiff not entirely credible (see Joint Stip. at 15-17) that were not given by the ALJ in the Decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); and Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ's determination that Plaintiff's testimony about using a wheelchair prescribed 10 years earlier and using a scooter prescribed 3 years earlier was not supported by the medical evidence (i.e. treatment records, orthopedic report) was an insufficient reason for finding Plaintiff less than fully credible with respect to her testimony about the severity of her physical impairments. Once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'" Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)). The ALJ did not cite to any evidence, including Plaintiff's treatment records and Dr. Bernabe's August 7, 2013 Report, contradicting Plaintiff's testimony that she had not been prescribed a wheelchair 10 years earlier and a scooter 3 years earlier. Compare Chaudry v. Astrue, 688 F.3d 661, 671, n. 9 (9th Cir. 2012)(finding that the claimant's "non-prescribed use of a wheelchair and unwarranted use of a cane," which was supported by specific evidence in the record -- "The cane was prescribed only at [the claimant's] request and the wheelchair was never prescribed. The record reflects that use of a cane was not appropriate for [the claimant's] asserted back pain." -- also factored into the ALJ's

determination that (the claimant's] subejctive expression of his
limitations lacked credibility.").

Third, to the extent that the ALJ determined that Plaintiff was not
credible because her testimony about taking less pain medication (Norco)
than she should out of concerns about addiction (<u>see</u> AR 54) was
inconsistent with her lack of pain management and her overuse of
anxiolytics and pain medication (<u>see</u> AR 23), the ALJ's reason for
discounting Plaintiff's testimony was not clear and convincing. <u>See</u>
<u>Trevizo</u>, <u>supra</u>, 862 F.3d at 1001-02 ("The ALJ did not address the
believability of Trevizo's proffered reasons: her fear of becoming
addicted to narcotics and the abiltity of alternate drugs to control her
pain. The ALJ's weighing of Trevizo's failure to take narcotics against
her credibility was thus erroneous."). While the ALJ was critical of
Plaintiff not being in pain management, the ALJ failed to cite evidence
that Plaintiff had been referred to pain management. <u>See</u> <u>Tommasetti v.</u>
<u>Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008)(an ALJ may consider
"unexplained or inadequately explained failure to seek treatment or to
follow a prescribed course of treatment" when weighing a claimant's
credibility)(citation omitted). The ALJ also failed to state how
Plaintiff's testimony concerning her concerns about addiction was
inconsistent with Plaintiff not being in pain management and did not ask
Plaintiff why she was not in pain management.

At the hearing, Plaintiff testified she did not take certain medication, specifically a prescribed patch (Lyrica), because she could not afford it and did not have great insurance. (<u>See</u> AR 50-51, 53-54; <u>see also</u> AR 653 (In a Report dated August 4, 2013, consultative psychiatric examiner Khushro Unwalla, M.D., stated that Plaintiff "is underutilizing her psychiatric medications including Prozac and BuSpar becaus of insurance issues"). Plaintiff's lack of involvement in pain management may have been related to her financial issues. <u>See Smolen</u>, <u>supra</u> ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms [such as the plaintiff's testimony that "she had not sought treatment (and therefore was not taking medication) for her chronic fatigue and pain because, as a result of not being able to maintain a job, she had no insurance and could not afford treatment"], her symptom testimony cannot be rejected for not doing so."); <u>see also</u> <u>Regennitter v. Commissioner of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1297 (9th Cir. 1998)(". . . [W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it[.]"); <u>Gamble v.</u> <u>Chater</u>, 68 F.3d 319, 322 (9th Cir. 1995)("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.")(quoting <u>Gordon v. Schweiker</u>, 725 F.2d 231, 237 (4th Cir. 1984)). In addition, the ALJ failed to state how Plaintiff's testimony concerning her concerns about Narco addiction was inconsistent with Dr. Unwalla's statements that Plaintiff appeared to overuse anxiolytics and

pain medications (see AR 652-53). At the hearing the ALJ asked Plaintiff, in a compound question, about her overuse of medication, but did not have Plaintiff focus on her overuse of medication in her responses. (See AR 46-47).

Fourth, none of the reasons given by the ALJ for finding Plaintiff's testimony concerning the severity of her mental impairments not entirely credible -- namely, Plaintiff stopped working because she was not treated well at the workplace; Plaintiff responded well to mental health treatment; Plaintiff's medication management became more difficult because she did not continue to go to a psychiatrist, but she acknowledged benefitting from Prozac; and Plaintiff interacted appropriately with treatment providers and consultative examiners -- was clear and convincing. Unlike Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)(finding that the ALJ's reliance, in part, on the claimant's false statements at the administrative hearing and to a doctor that "he left his job because he was laid off, rather than because he was injured"), a case relied on by Defendant (see Joint Stip. at 17), there is no indication that Plaintiff gave false information about why she left her employment (see AR 212 ["I left before they could fire me cuz I couldn't take it any longer."], which was consistent with her hearing testimony, AR 52 ["The last place I worked was not a very friendly place which kicked up the anxiety even worse."]). Moreover, while the ALJ stated that Plaintiff responded well to mental health treatment, the ALJ failed to cite to particular medical records that

specifically contradicted Plaintiff's testimony about her symptoms and limitations.  Although, as the ALJ noted, Plaintiff testified the Prozac prescribed by the psychologist "seems to have helped" (AR 47), she also testified that her anxiety still "kicks in" when she goes any anywhere, particularly to an interview (AR 47).  Thus, it is unclear, based on Plaintiff's own testimony, that the Prozac was effective in controlling her symptoms.  See Warre v. Comm'r of Soc. Sec. Admin. 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Finally, the ALJ failed to specify how Plaintiff's ability to interact appropriately with treatment providers and consultative examiners served as a basis for discounting Plaintiff's testimony.[7]

**B.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise

---

[7]     The Court notes that Defendant did not discuss three of the ALJ's reasons for finding Plaintiff's testimony concerning the severity of her mental impairments not entirely credible (namely, positive response to mental health treatment; benefit from Prozac; and appropriate interaction with treatment providers and consultative examiners), see Joint Stip. at 15-17.

this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179

("[T]he decision of whether to remand for further proceedings turns upon

the likely utility of such proceedings."). However, where, as here, the

circumstances of the case suggest that further administrative review

could remedy the Commissioner's errors, remand is appropriate.  <u>McLeod</u>

<u>v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>,

211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility,

remand is appropriate.  Because outstanding issues must be resolved

before a determination of disability can be made, and "when the record

as a whole creates serious doubt as to whether the [Plaintiff] is, in

fact, disabled within the meaning of the Social Security Act," further

administrative proceedings would serve a useful purpose and remedy

defects.  <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir.

2014)(citations omitted).[8]

//

//

//

---

[8]     The Court has not reached any other issue raised by Plaintiff
except to determine that reversal with a directive for the immediate
payment of benefits would not be appropriate at this time.
"[E]valuation of the record as a whole creates serious doubt that
Plaintiff is in fact disabled." <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995,
1021 (2014).  Accordingly, the Court declines to rule on Plaintiff's
claims regarding the ALJ's failure to properly determine Plaintiff's RFC
(<u>see</u> Joint Stip. at 3-8).  Because this matter is being remanded for
further consideration, this issue should also be considered on remand.

**ORDER**

    For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

    LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 16, 2017

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE
